STATE EX REL. WIEDENHOFT and others, Respondents, vs. ANDERSON and others, Appellants.

*March 15—April 12, 1946.*

*E. C. Smith* of Tomahawk, for the appellants.
*Frank E. Hebert* of Tomahawk, for the respondents.

ROSENBERRY, C. J.   From the allegations of the petition it appears that Joint School District No. 2 was created by the consolidation of three school districts.   Within the boundaries of the district there are two school buildings, the Bass Lake

school and the Highland Flat school. That at an adjourned meeting of the annual meeting the electors voted to close the Bass Lake school and operate the Highland Flat school. A subsequent and special meeting of the electors of the districts was held and it was then voted to close the Highland Flat school and open the Bass Lake school. The number of children attending each school is stated.

It is further alleged that the school board disregarded the wish of the electors and kept the Bass Lake school closed; hired a teacher for the Highland Flat school and contracted to transport children thereto.

That at a second subsequent meeting, due notice of which was given, it was again voted to operate the Bass Lake school and close the Highland Flat school. Despite the determination of the district school meeting to the contrary, the school board continues to operate the Highland Flat school.

It is further alleged that the action of the school board is illegal and in violation of their statutory duties, and that unless they be ordered to discharge their alleged duties, serious consequences will result, and that petitioners have no other or speedy remedy.

The question presented for decision is whether the power to determine in which school building school shall be held resides in the school district meeting or in the school board. There is no direct statutory provision which controls the controversy. It is necessary therefore to consider the powers conferred by statute upon the school district meeting and the school board to determine where the power lies.

Sec. 40.04, Stats., provides among other things:

"The annual common school district meeting shall have power: . . .

"(4) *Building sites.* To designate sites for district schoolhouses or teacherages. . . .

"(7) *Sale of property, proviso.* To authorize and direct the sale of any property belonging to the district, when the same shall be no longer needed for the use of the district.

Provided, that if the school site or other lands are to be abandoned but were acquired or are held upon condition that they should revert to the prior owner when no longer used for school purposes, the board shall sell the buildings or move them to another site within eight months after the buildings shall cease to be used for school purposes or the site ceases to be maintained as a district playground or park."

Sec. 40.16, Stats., prescribes the powers and duties of the school board. The applicable provisions are as follows:

"(1) Subject to the authority vested in the district meeting and to the authority and possession specifically given to other officers, the common school board shall have the possession, care, control and management of the property and affairs of the district."

There is no other subsection to sec. 40.16, Stats., applicable to the matter under consideration. It is to be noted that the power conferred by sec. 40.16 upon the school board is subject *to the authority vested in the district meeting.*

The trial court was of the view that under the provisions of sec. 40.04, Stats., already set out, coupled with the provisions of sub. (5) of the same section, which provides that the annual school district meeting has power—

"to vote a tax to purchase or lease suitable sites for school buildings, to build, hire or purchase schoolhouses or teacherages or outbuildings, and to furnish, equip and maintain the same,"

that the power was in the school district meeting.

There can be no doubt that the law does give the district meeting power to designate the site for school buildings in which to conduct the education of its children.

In this case, however, the sites had already been selected. They were selected by the districts which were consolidated to form Joint School District No. 2. Therefore the provisions relating to sites seems to have no application to the now existing situation. However, sub. (7), sec. 40.04, Stats., already

set out confers authority upon the school district to sell abandoned property, meaning thereby property no longer needed for the use of the district. This section by necessary inference confers upon the school district meeting power to determine which property is no longer needed for the use of the district, and therefore to determine which property shall cease to be used for school purposes. The power to determine this matter must rest somewhere because it is the clear intent and purpose of the statute to provide for the disposition of any property no longer needed or useful. If the land on which the buildings are located is held upon condition after it is determined that the property is no longer needed for school purposes and the property is to revert to the owner, it then becomes the duty of the school board to make the sale. The power of the school district meeting to authorize and direct the sale includes the power to determine which property shall be sold, and therefore which property is no longer needed for the use of the district, and as a necessary consequence to determine by the process of exclusion where school shall be held. This conclusion is in accord with recognized democratic processes. The school board has no power to overrule the determination of the school district meeting in a matter which is not specifically conferred upon it by statute. It is not inherently superior to the body which elects it.

*By the Court.*—The order appealed from is affirmed.

RECTOR, J., took no part.