STATE EX REL. Doctor WALDECK, and others, Plaintiffs-Respondents, v. GOEDKEN, Superintendent of Schools, and others, Defendants-Appellants.

*No. 76–518. Argued June 5, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 362.)

410

For the appellants there were briefs by *Walter S. Davis, Dianne S. Cauble,* and *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S.C.,* of Milwaukee, and oral argument by *Walter S. Davis.*

For the respondents there was a brief and oral argument by *Edward Rudolph* of Elm Grove.

CALLOW, J.    This is a class action brought by certain electors and taxpayers of the Elmbrook School District to determine whether the power to close the Leland Elementary School and convert the school premises to other

educational uses resides with the Annual Meeting of the electors or with the School Board. The action is also brought to compel the District Clerk to call a Special Meeting of the electors to vote on whether to close the Leland Elementary School.

The Elmbrook School District (Joint Common School District No. 21) is a joint common school district embracing the city of Brookfield, part of the city of New Berlin, the town of Brookfield, and the village of Elm Grove. Until 1976 the District operated two high schools, three junior high schools, ten elementary schools, and two special education schools. The official student enrollment in the District during the 1975–76 school year was 10,460; 4,553 of those students were in the elementary schools. The District's annual budget for the 1975–76 school year was $18,892,478. Two of the District's elementary schools, Leland School and Tonawanda School, were located in Elm Grove.

Faced with a projection of declining general state aids through 1979 and a declining student enrollment, particularly in the elementary schools, the School Board, at a regularly convened meeting on November 25, 1975, voted to close the Leland Elementary School in September, 1976, and to use the premises in part as a special education school and in part as a faculty resource library, administrative office area, a media center, and a storage area. At this meeting, the Board also resolved to formulate a plan to reassign the children who would otherwise attend Leland School.

The Leland Elementary School consists of a building, which has been extensively improved, and approximately eight acres of land. The school has been operated uninterruptedly as an elementary school for over fifty years. In 1975–76, 509 students were enrolled in the Leland School.

Sec. 120.08(2)(a), Stats., provides that upon the written request of 3 per cent of the heads of families or one

hundred electors, whichever is less, residing in a school district, the district clerk shall call a special meeting of the electors. Under sec. 120.08 (2) (c), Stats., a special meeting can exercise all the powers of the annual meeting, except the power to elect school board members. Pursuant to these statutes on March 11, 1976, 220 electors of the Elmbrook District requested a special meeting to determine whether to keep open the Leland Elementary School during the forthcoming 1976–77 school year and whether to appoint an Electors Study Committee to study the necessity of closing any district elementary schools in the foreseeable future.

Sec. 120.08 (2) (a), Stats., authorizes the district clerk to reject a request for a special meeting on a subject beyond the power of the special meeting to transact. Pursuant to this statute, on March 15, 1976, upon the advice of the District's counsel, the District Clerk rejected the electors' request of the special meeting to decide whether to keep open the Leland School as beyond the power of the special meeting.

As a result, on May 6, 1976, the plaintiffs commenced this action seeking a writ of mandamus to compel the calling of the meeting, declaratory and injunctive relief, and money damages. The complaint alleges that at no time prior to the decision of the School Board to close Leland School was an annual or special meeting held at which the residents of the District could vote on whether to close Leland School. The complaint prays for a declaratory judgment finding that without such authorization by the electors the Board's decision to close Leland School and redistrict its students exceeded its powers under the school statutes. The complaint also prays that the District Clerk be compelled to call a special meeting for the purposes of voting on the plan to close Leland School and that the Board be enjoined from carrying out its plan until the citizens of the District have voted to approve it.

In a memorandum opinion dated May 19, 1976, the trial court declared that the power to terminate the operation of Leland School as an elementary school resides in the annual or special meeting of the electors. Therefore, the court granted the peremptory writ of mandamus and temporarily enjoined the Board from carrying out its plan to close Leland School until after a special meeting was held.

■

After the trial court granted the plaintiffs the relief sought for in their complaint, the special meeting requested was held, and on June 7, 1976, the citizens of the District voted to support the Board's decision to close the Leland Elementary School. Thus the controversy which gave rise to this case is moot. Though as a general rule this court will not consider questions which have become moot due to a change in circumstances, this court will decide a moot question if it is of great public importance. *Milwaukee Professional Firefighters, Local 215, IAFF, AFL–CIO v. Milwaukee*, 78 Wis.2d 1, 253 N.W.2d 481 (1977) ; *State ex rel. Renner v. Department of Health & Social Services*, 71 Wis.2d 112, 237 N.W.2d 699 (1976) ; *State ex rel. Ellenburg v. Gagnon*, 76 Wis.2d 532, 251 N.W.2d 773 (1977) (Per Curiam) ; *Mueller v. Jensen*, 63 Wis.2d 362, 217 N.W.2d 277 (1974) ; *State v. Seymour*, 24 Wis.2d 258, 261, 128 N.W.2d 680 (1964). The respective powers of the school board and the annual meeting of the electors with respect to the closing of a school is at present an issue of great public concern. Therefore, although this particular case is now moot, we will reach the merits of the controversy.

To determine whether the School Board has the power to close Leland Elementary School, we must construe the scope of the powers granted to the Board and to the electors under Chapter 120, Stats. That chapter divides the governance of the affairs of the Elmbrook Common School District between those two bodies.

Sec. 120.10, Stats., gives nineteen certain specific powers to the annual meeting. The annual meeting, for example, votes the taxes to operate and maintain the system; it fixes the number of school days and directs the prosecution or defense of legal proceedings in which the district is interested; it authorizes the school board to furnish textbooks, school lunches, and to employ nurses and dentists. In addition, the annual meeting has certain powers over the sites at which school is held. Sec. 120.10 (5), Stats., gives the annual meeting the power to "Designate sites for school district schoolhouses or teacherages and provide for the erection thereon of suitable buildings or for the lease of suitable buildings for a period not exceeding 20 years with annual rentals as fixed by the lease." Sec. 120.10 (12), Stats., gives the annual meeting the power to "Authorize the sale of any property belonging to and not needed by the school district. If a school site or other lands are to be abandoned which were acquired or are held upon condition that they revert to the prior owner when no longer used for school purposes, the school board shall sell any school buildings thereon or move them to another site within 8 months after the school buildings cease to be used for school purposes or the site ceases to be maintained as a school district playground or park."

Sec. 120.12 and sec. 120.13, Stats., lists the powers and duties of the district school board. These two statutes give the board certain specific powers and duties, including the authority to determine the school tax to be assessed if the annual meeting has not voted a sufficient amount; to maintain property and casualty insurance; to inventory school property; to establish school hours; to apply for and receive federal aid; and to grant the use of the school to community groups for the discussion of public questions. In addition, these statutes impose upon the board general duties of supervision, management and control over the operation of the school sys-

tem. Sec. 120.12(1) provides that the school board shall "Subject to the authority vested in the annual meeting and to the authority and possession specifically given to other school district officers, have the possession, care, control and management of the property and affairs of the school district." Sec. 120.12(2), Stats., empowers the board to exercise "general supervision over [the] schools"; while sec. 120.13(1), Stats., empowers the board to make rules for the "organization, gradation and government of the schools."

This division of power between the school board and the annual meeting has characterized the Wisconsin school system from the beginning.[1] As this court once pointed out in *Leahy v. Joint School District No. 12,* 194 Wis. 530, 533, 217 N.W. 293 (1928): "Just why such a vital and important distinction should be made between the school district as such and its officers, the school board, it is now immaterial to question." In *Leahy,* we stated that the legislature made and has continued such distinction and mandate, and this court must continue to recognize and uphold it. *Id.*

In *State ex rel. Wiedenhoft v. Anderson,* 248 Wis. 566, 22 N.W.2d 516 (1946), we discussed this division of power in the context of the closing of a school. In *Wiedenhoft,* a joint school district was created by the consolidation of three school districts. Within the boundaries of the newly consolidated district there were two elementary schools, but only one was needed for the district. At an annual meeting the residents voted to close one school and operate the other. At a subsequent special meeting, the residents changed their minds and

---

[1] Chapter 19, sec. 11, Rev. Stats. 1849, authorizes the annual meeting to designate sites and authorize the sale of school property in almost identical language to that of sec. 120.10(5) and (12), Stats. Statutes giving the board management of district property are found in Chapter 19, sec. 36, Rev. Stats. 1849; while a statute granting the board authority to make rules governing the schools is found in Chapter 27, sec. 439, Rev. Stats. 1878.

voted to close the school they had originally decided to operate. The school board disregarded the second vote and closed the school originally voted to be closed. This court held that in closing this school without the authorization of the annual meeting the board exceeded its statutory powers. The court reasoned that, by necessary implication from the express power granted to the meeting to authorize the sale of school property, the power to determine which school building should operate resides in the meeting and not in the board.

In *Wiedenhoft,* this court noted that, although general supervisory and management powers over the school are vested in the board, these powers are subject to the authority vested in the annual meeting. The court observed that, though the meeting had the express power "to designate sites for district schoolhouses," this statute was not dispositive since the school sites were already in existence. We held that the controlling power was the power of the annual meeting to authorize and direct the sale of any district property no longer needed for the use of the district in what is now numbered sec. 120.10 (12), Stats.: "The power of the school district meeting to authorize and direct the sale includes the power to determine which property shall be sold, and therefore which property is no longer needed for the use of the district, and as a necessary consequence to determine by the process of exclusion where school shall be held." 248 Wis. at 569. We pointed out in *Wiedenhoft* that our holding was "in accord with recognized democratic processes." *Id.*

The electors contend that in *Wiedenhoft* the court in effect decided the issue presented here when it held that the powers to authorize and direct a sale of school property included the power to determine where school shall be held. However, the *Wiedenhoft* holding must be read in its factual context. There a school was to be closed because it was no longer needed for the use of the district. Our court concluded that the annual meeting could

determine which school should be closed and therefore where school shall be held because that determination was implicit in its power to authorize the sale of property not needed for the use by the district. Here, however, Leland School is still needed for the use of the District. Because the property is still needed for the use of the District, the power of the meeting to authorize a sale of the property, which was controlling in *Wiedenhoft,* does not come into play. As the trial court pointed out, this appeal presents a different question than that presented in *Wiedenhoft* and that *Wiedenhoft* is not in itself controlling.

The School Board relies on *State ex rel. Beattie v. Board of Education,* 169 Wis. 231, 172 N.W. 153 (1919), for the rule that the Board's powers of organization and gradation include the right to transfer Leland students in the best interest of the District. In *Beattie,* a handicapped child in the city of Antigo school system was to be placed in a special school. At the beginning of the school year, the child was refused admittance to the elementary school. The child's parents sought a writ of mandamus to compel the school board to admit their child to the public elementary school. The statutes in effect at that time governing the city of Antigo school system gave the board the express power to make rules and regulations for the transfer of pupils from one department to another. The court therefore held that the school board was legally empowered to require this child to attend the special school.

The School Board's reliance on *Beattie* is misplaced. *Beattie* did not involve the school statutes at issue here. In *Beattie,* the city of Antigo school statutes explicitly empowered the board to transfer students, whereas the statutes at issue here merely give the Board general powers of supervision and control. *Beattie* is therefore of little precedential value in this instance. Thus neither *Wiedenhoft* nor *Beattie* are dispositive of the question presented here.

The governance of a common school district under Chapter 120, Stats., is with some limited exceptions, a representative democracy. The statutes place general powers of management, supervision, and control in the board. These general powers are subject only to "the authority vested in the annual meeting and to the authority . . . given to other school district officers," sec. 120.12(1), Stats. By contrast with the general powers of the school board, the annual or special meeting of electors is given in sec. 120.10, Stats., a series of specifically enumerated powers. Sec. 120.10 includes no catch-all provision giving to the meeting of electors any powers not specifically enumerated in sec. 120.10. Therefore, the annual meeting has only those powers specifically conferred either expressly or by necessary implication in sec. 120.10. The meeting does not have the express power to discontinue a school or control the use of school property. Therefore, the annual or special meeting has the power to convert Leland Elementary School to some other educational use only if that power is implicitly granted to the meeting through the power to designate school sites and the power to authorize the sale of school property in sec. 120.10(5) and (12), Stats.

Sec. 120.10(5), Stats., gives the annual or special meeting power to designate sites for schoolhouses or teacherages and the power to erect suitable buildings thereon. Sec. 120.10(12), Stats., gives the annual or special meeting power to authorize which of the sites are to be sold when the property is no longer needed for the use of the district. The trial court concluded that these powers taken together implicitly vest in the meeting the power to designate where their children will be educated.

■

■ Giving the electors powers over the purchase and sale of school property gives them some measure of control over where their children will attend school. Such control, no doubt, was substantial in the simple school system of 1849 when these statutes were enacted. It does not, however, follow that the annual meeting can in all cases control where each child shall attend school. Under sec. 120.13(1), Stats., the board is given the power to make rules for the organization, gradation and government of the schools. In contrast to the "duties" enumerated in sec. 120.12, Stats., this power is not made subject to any authority vested in the annual meeting. In the exercise of its rule-making power under sec. 120.13(1), the school board can change an elementary, junior, and high school system into an elementary, middle, and high school system, thereby rearranging grade levels in specific schools and affecting where some children attend school and where some types of school shall be held. Sec. 120.10(5) and (12), Stats., give the meeting control over the number and location of school facilities and to that extent control over where school shall be held. But it would be implying too much from the language of these two statutes to hold that its power over the disposition of school property gives the meeting control over the particular educational uses to which individual units of property may be put. We do not find that the power to convert an elementary school to a different type of educational facility is implicitly granted in sec. 120.10(5) and (12), and therefore we hold that this power resides in the board. In fact, we find that the power to change the use to which Leland School is put is necessarily included in the Board's rule-making power to organize, grade, and govern the schools under sec. 120.13(1), Stats.

■

Our construction of secs. 120.10, 120.12, and 120.13, Stats., placing the power to close the Leland Elementary School in the Board is supported by the existence of sec. 120.10(19), Stats. This statute gives the annual meeting in a union high school the power to "vote to consolidate schools or to discontinue a school where more than one high school is operated by the school district." The legislature contemplated the problem presented here and granted to the annual or special meeting limited authority to discontinue a school only in union high school districts. If, as the electors argue, the power to close a school can be implied from the annual meeting's power to designate sites and sell unneeded property, subsection (19) would be superfluous.

■

Sec. 120.10, Stats., evidences the legislature's intent to enumerate the powers of the annual meeting. Where the legislature grants a series of powers under circumstances which suggest that the grant is exclusive, according to the doctrine of *expressio unius est exclusio alterius,* powers not granted are not conferred. We find the fact that the legislature granted the annual meeting the power to discontinue a union high school under some circumstances implies that the legislature did not grant the annual meeting power to discontinue school in a common elementary school.

■

The electors ask us to construe the power of the annual meeting to designate sites for schoolhouses under sec. 120.10(5), Stats., to include the power to determine how each of these sites shall be used. However, the reference to the designation of sites in sec. 120.10(5) appears in the context designating sites for the erection of new schoolhouses and teacherages. In the *Wiedenhoft Case, supra* at 568, we pointed out that the meeting's power to

designate sites under sec. 120.10 (5) does not apply after the school has already been built. We believe that the construction proposed by the electors is contrary to the plain meaning of sec. 120.10 (5). We hold that sec. 120.10 (5) and sec. 120.10 (12), Stats., were not intended to give the annual meeting power to decide which, if any, school shall be converted to some other type of educational facility and that the school statutes vest this power in the board. The judgment entered by the trial court declaring that the power to close the Leland Elementary School lies in the annual or special meeting must be set aside and the trial court directed to enter a judgment declaring that this power resides in the Board.

The electors have also filed a notice for review of the trial court's denial of their request for the recovery of attorney fees in the amount of $1,500. Since we have reversed the judgment entered in favor of the electors and have directed the trial court to enter judgment in favor of the defendants, we need not consider the issue raised by the notice of review.

*By the Court.*—Judgment reversed, with directions to enter a declaratory judgment consistent with this opinion.