James HAHNER and Mary F. Hahner, by her Guardian ad Litem, Gerald M. O'Brien, Plaintiffs-Respondents, v. BOARD OF EDUCATION WISCONSIN RAPIDS, SCHOOL DISTRICT NO. 1, Defendant-Appellant.

Court of Appeals

*No. 77–871. Argued November 30, 1978.— Decided February 28, 1979.*
(Also reported in 278 N.W.2d 474.)

For the defendant-appellant there were briefs by *Michael H. Auen* of *Melli, Shiels, Walker & Pease, S.C.*, and oral argument by *Michael H. Auen* of *Melli, Shiels, Walker & Pease, S.C.*, Madison.

For the plaintiffs-respondents there was a brief by *Maris Rushevics* of *Anderson, Fisher, Shannon, O'Brien & Rice*, and oral argument by *Maris Rushevics* of *Anderson, Fisher, Shannon, O'Brien & Rice*, Stevens Point.

Before Gartzke, P.J., Dykman, J. and George R. Currie, Reserve Judge.

CURRIE, J. After the briefs had been filed in this case the court requested the parties to file briefs on the issue of mootness inasmuch as the school week with which the judgment was concerned had long since passed. The parties complied with this request and briefs dealing with the mootness issue were submitted prior to oral argument.

The general rule is that a court will not render a decision in a moot case because it would be advisory and a court acts only to determine actual existing controversies

and not to announce abstract principles of law.[1] In *Wisconsin E. R. Board v. Allis-Chalmers W. Union*[2] the Wisconsin Supreme Court stated:

A moot case has been defined as one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy.

This definition of mootness was reaffirmed in the recent case of *State ex rel. Ellenburg v. Gagnon.*[3]

Though as a general rule it will not consider questions which have become moot, the supreme court has recognized an exception when the moot question is of great public importance.[4] In order for a court to consider a case that has become moot the question must be of "sufficient public character, interest and significance."[5]

Examples of issues which have been held to be of sufficient public importance to warrant a court deciding them after circumstances have rendered the decision moot as to the parties involved are: whether a school board or the annual school meeting of the electors has the power to close a school and convert the school building to other uses;[6] what constitutes "good and sufficient reasons" to support the issuance of a certificate or-

---

[1] *Smith v. Smith*, 209 Wis. 605, 608, 245 N.W. 644 (1932).

[2] 252 Wis. 436, 440–41, 31 N.W.2d 772 (1948).

[3] 76 Wis.2d 532, 535, 251 N.W.2d 773 (1977).

[4] *State ex rel. Waldeck v. Goedken*, 84 Wis.2d 408, 413, 267 N.W.2d 362 (1978); *State v. Seymour*, 24 Wis.2d 258, 261, 128 N.W.2d 680 (1964).

[5] *Mueller v. Jensen*, 63 Wis.2d 362, 367, 217 N.W.2d 277 (1974).

[6] 84 Wis.2d at 413.

dering a special election to recall a public official;[7] and whether the district attorney or the county corporation counsel is the proper officer to enforce the state gambling law.[8]

The court is of the opinion that the issue presented in this case of the proper interpretation of the statutes having to do with the transportation of pupils attending private schools is one of sufficient public importance to warrant the court retaining the case and deciding it on the merits. Not only is the issue one of public importance, but it is one that may frequently recur if not now decided, as pointed out in the brief filed by appellant on the mootness issue. It was held in *Racine v. J-T Enterprises of America, Inc.*[9] that even though an appeal has become moot insofar as the particular parties are concerned, if the question frequently recurs, the decision has a practical legal effect since it can guide trial courts in similar instances.

The issue on the merits is whether the appellant school board violated sec. 121.54(2)(b)1, Stats., when it declined to bus students attending the Catholic elementary schools in the district during the period of March 20 through March 24, 1978, during which the public schools were to be closed for spring vacation. The crucial question is whether the school board is by statute given any control over the time when it is required to operate buses to transport students to the private schools which they may be attending, and, if it does, whether this control extends to denying such transportation during days when the public schools are closed for scheduled vacation.

[7] 63 Wis.2d at 367.

[8] 24 Wis.2d at 261.

[9] 64 Wis.2d 691, 701, 221 N.W.2d 869 (1974). *See also Wis. Environmental Decade v. Pub. Service Comm.*, 79 Wis.2d 409, 442 n. 25, 256 N.W.2d 149 (1977).

The court is satisfied that in answering these questions it must not only refer to sec. 121.54 (2) (b) 1, Stats., but must also give consideration to the provisions of sec. 121.-56, Stats. These two sections being *in pari materia* must be construed together. They provide as follows:

Section 121.54 (2) (b) 1, Stats.

Except as provided in sub. (1) or otherwise provided in this subsection, the school board of each district operating high school grades shall provide transportation to and from the school he attends for each pupil residing in the school district who attends any elementary grade, including kindergarten, or high school grade at a private school located 2 miles or more from his residence, if such private school is a school within whose attendance area the pupil resides and is situated within the school district or not more than 5 miles beyond the boundaries of the school district measured along the usually traveled route.

Section 12.56, Stats.

**School bus routes.** The school board of each district shall make and be responsible for all necessary provisions for the transportation of pupils, including establishment, administration and *scheduling* of school bus routes. Upon the request of any school board, the state superintendent shall provide advice and counsel on problems of school transportation. Any private school shall, upon the request of the public school officials, supply all necessary information and reports. The transportation of public and private school pupils shall be effectively co-ordinated to insure the safety and welfare of the pupils. Upon receipt of a signed order from the state superintendent, the school board shall discontinue any route specified by him. (Emphasis supplied.)

For the purposes of this case the word "scheduling" in sec. 121.56, Stats., is of paramount importance. It is a word not used in any of the other statutes dealing with the transportation of students to public and private schools. As applied to "school bus routes" it necessarily means more than merely establishing routes; otherwise

the word "establishment" in the same sentence would be superfluous. One of the cardinal rules of statutory construction is that the statute should be construed so as to give effect to every part of it.[10] Therefore, among the definitions of the verb "schedule" set forth in *Webster's Third New International Dictionary* 2028 (1976), the court deems the following is the appropriate one:

[t]o appoint, assign, or designate to do or receive something at a fixed time in the future.

Thus the court concludes the words "scheduling of school bus routes" in sec. 121.56, Stats., are to be construed as fixing the time or times when the established bus routes are to operate. The plaintiffs concede that this is so as to fixing the times of day that students will be picked up, but deny that this authority extends beyond that so as to permit a school board not to schedule bus transportation for students attending private schools on days when the public schools are closed.

The sentence of sec. 121.56, Stats., which the court has found most troublesome to interpret states, "The transportation of public and private school pupils shall be effectively co-ordinated to insure the safety and welfare of the pupils." This certainly refers both to the location of bus routes and the scheduled times when they are to operate. It also indicates that the legislature intended there be coordination of the location of routes and timing of bus service over these routes with respect to pupils attending both public and private schools. The legislature, however, does not state in what way this coordination promotes the safety and welfare of the students. This coordination in scheduling, however, would not be

---

[10] *Wilmot Union High School Dist. v. Rothwell*, 27 Wis.2d 228, 235, 133 N.W.2d 782 (1965).

possible on days when the public schools were operating and private schools were closed, or vice versa.

While the supreme court has decided a considerable number of cases subsequent to the adoption of art. I, sec. 23, Wis. Const.,[11] in 1967, none deal directly with the question of when a school board is required to transport students to private schools. However, the supreme court has made statements in some of these, setting forth general principles applicable to the discretion which sec. 121.-56, Stats., confers on school boards.

In several cases involving transportation of pupils to private schools, the supreme court has enunciated the reasonable uniformity doctrine. This was first stated in *Cartwright v. Sharpe:*[12]

The important change provided by the constitutional amendment and the enabling legislative acts was to provide that where transportation is furnished, either mandatory or permissive, it must be on a reasonably uniform basis to children attending either public or private schools.

Subsequent cases stating this uniformity doctrine are *State ex rel. Vanko v. Kahl,*[13] and *Young v. Board of Ed. Joint Dist. No. 10.*[14]

In *State ex rel. Knudsen v. Board of Education,*[15] the supreme court recognized that a school board has some

---

[11] This section provides:

*"Transportation of School Children.* Nothing in this Constitution shall prohibit the legislature from providing for the safety and welfare of children by providing for the transportation of children to and from any parochial or private school or institution of learning."

[12] 40 Wis.2d 494, 505, 162 N.W.2d 5 (1968).

[13] 52 Wis.2d 206, 212, 188 N.W.2d 460 (1971).

[14] 74 Wis.2d 144, 150, 246 N.W.2d 230 (1976).

[15] 43 Wis.2d 58, 66, 168 N.W.2d 295 (1969).

discretion in determining what is reasonable compliance with the statutes requiring that transportation be provided to pupils attending private schools, declaring:

> *State v. Walters* (1933), 212 Wis. 132, 134, 248 N.W. 777, in interpreting an earlier statute not concerned with transportation to private schools, held that what is reasonable in compliance with the statutes was to be left to the school board. We deem that the determination of what is reasonable is a function of the board's discretion and should be based not only on the pupil's option of initial choice but also upon the school board's consideration of the reasons impelling the student's choice and whether the implementation of that choice by publicly furnished transportation accords with its responsibilities, including its duty to effectively coordinate its transportation activities "to insure the safety and welfare of the pupils." Sec. 121.56, Stats.

The crucial question is whether a school board's discretion in coordinating the scheduling of the transportation of pupils to public and private schools extends to not transporting pupils to private schools during a week when the public schools are closed for vacation. As stated in the above quoted extract from the *Knudsen* case, the purpose of coordinating these transportation activities is "to insure the safety and welfare of the pupils" as provided in sec. 121.56, Stats.[16] This court believes the objective of this requirement is to prevent discriminatory treatment of pupils attending private schools in the transportation provided them. The fact that the school district would save money by not transporting private school pupils during a week when the public schools are closed for vacation is a factor which bears no relationship to the safety and welfare of the pupils being transported to private schools.

---

[16] These statutory words "to insure the safety and welfare of the pupils" are derived from the words "the safety and welfare of the children" set forth in art. I, sec. 23, Wis. Const.

There are other factors that also merit consideration by the court in passing on this question, of whether the board's discretionary power to coordinate the establishing and scheduling of routes to transport pupils attending both public and private schools, extends to not transporting pupils to private schools. These factors are an opinion by the Attorney General and the following of that opinion by the Department of Public Instruction.

The Attorney General in 1972 rendered an opinion[17] in which he ruled that "public schools are required to provide transportation for eligible private school pupils on days the public schools are not in session. . . . To do otherwise would constitute an inconsistent and non-uniform application of the law." The Department of Public Instruction, by letter dated September 19, 1977, to an administrator of the Catholic parochial schools in the district, stated that pursuant to this opinion of the Attorney General the appellant board was obligated to provide school transportation for eligible pupils on days the public schools are not in session. A copy of this letter was sent to the board's transportation director. The Department of Public Instruction and the Superintendent of Public Instruction are, by secs. 121.52(2)(c) and (3), 121.54(4)(b) and (9) and 121.58(5), Stats., given certain administrative functions to perform over the transportation of school pupils.

An Attorney General's opinion is only entitled to such persuasive effect as the court deems the opinion warrants.[18] However, the interpretation of a statute by an administrative agency charged with the duty of administering a statute, while not binding on the court, has great bearing on the determination of what the appropriate

---

[17] 61 O.A.G. 240, 244 (1972).
[18] *Wood County v. Bd. of Vocational, T. & A. Ed.,* 60 Wis.2d 606, 613, 211 N.W.2d 617 (1973).

construction should be,[19] and is entitled to due weight.[20] Here the statutory interpretation was not one originally made by the Department of Public Instruction, but one made by the Attorney General which it adopted. Nevertheless, the court deems this application of the Attorney General's opinion is entitled to some consideration by the court.

After giving consideration to all of the aforementioned factors, the court has concluded that the discretion of the school board granted it by sec. 121.56, Stats., does not extend to refusing to transport to the Catholic elementary schools in the district the pupils attending such schools during the period commencing March 20 through March 23, 1978; and, therefore such refusal violated sec. 121.54(2) (b) 1., Stats.

The appellant board contends that the reason the five Catholic elementary schools did not observe the same week of spring vacation in 1978 as the public schools was based on religious grounds, and therefore, if the board were to have transported these pupils during the period of March 20 through March 23, 1978, the establishment of religion prohibition of the first amendment to the United States Constitution would have been violated. The board points out that in the stipulated facts it was stated that the Catholic Board of Education, which administers these five parochial schools, deemed it important that children from kindergarten through grade eight "remain in school during this week so that the religious observances which are conducted prior to the actual commencement of the curriculum of the school each day have meaning and significance for them."

[19] *Milwaukee v. WERC*, 71 Wis.2d 709, 714, 239 N.W.2d 63 (1976).

[20] *Beloit Education Asso. v. WERC*, 73 Wis.2d 43, 67, 242 N.W. 2d 231 (1976).

The days of March 20 through March 23, 1978, were normal school days at the five Catholic elementary schools in which a day-to-day academic curriculum was offered in the same manner as any other school day. Except as to the content of the religious observances conducted prior to the commencement of the school day, there was nothing unique about the conducting of classes on those four days. It had been customary to conduct such religious observances prior to the commencement of classes.

The United States Supreme Court held in *Everson v. Board of Education*[21] that the establishment of religion clause of the first amendment is not violated by the transportation of pupils to parochial schools at public expense even though religious instruction may be given in such schools. This holding is not limited in its application to school days when the public schools also are in session. It is difficult to perceive how the establishment of religion was more supported by expenditures of public funds in transporting pupils to the five Catholic elementary schools on those four days than any other school days when the public schools were in session.

This court is of the opinion that school boards are not required to become entangled in matters of religion by having to ascertain whether or not a request to transport pupils to a parochial school on days when the public schools are to be closed was primarily due to religious reasons. Whether or not pupils should be transported to private schools at public expense on days when the public schools are closed presents a policy issue that lies within the province of the legislature to determine.

*By the Court.*—Judgment affirmed.

---

[21] 330 U.S. 1 (1946).