Gerald NEIS, as taxpayer and elector, and for the benefit of Randolph School District, Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF RANDOLPH SCHOOL DISTRICT, Defendant-Respondent. †

Court of Appeals

*No. 84–1626. Submitted on briefs September 18, 1985.—*
*Decided December 26, 1985.*
(Also reported in 381 N.W.2d 614.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Boyle, Steffes & Schwefel* of Beaver Dam.

For the defendant-respondent the cause was submitted on the brief of *Eileen A. Brownlee* and *Kramer Law Office* of Fennimore.

Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J.  Gerald Neis appeals from a judgment dismissing his complaint for an injunction against the Randolph Common School District's expenditure of tax revenues collected under sec. 120.10(6), Stats. (1975).[1] The issue is whether a common school district may acquire real property for an undesignated purpose. We conclude it cannot, and reverse.

## FACTS

On July 26, 1976, school district electors authorized purchase of 24 acres for a new elementary school. August 26, 1976, the district school board exercised an option to buy 24 acres of land owned by Edwin and Jessie Smedema. September 30, 1976, the board decided to build the school on other property. Various district members suggested other uses for the Smedema parcel: to enlarge the existing Randolph High School site; use as a "cornfield classroom" for agricultural education; to provide access from the high school to a county trunk highway or use as a buffer zone between the high school and local industrial development. None of these suggestions was adopted by the district. Nonetheless, the board attempted to purchase the Smedema parcel.

The Smedemas refused to convey the property, arguing that secs. 120.10(5) and (6), Stats. (1975), barred the district's purchase of the land except as a site for

---

[1] Section 120.10(6), Stats. (1975), provides in part:

The annual meeting of a common or union high school district may:

. . . .

(6)  Vote a tax to purchase or lease suitable sites for school buildings. . . .

a "schoolhouse or teacherage."[2] The school district sued the Smedemas for specific performance. The trial court held that the Smedemas, as parties to the option, lacked standing to raise defenses alleging the district's inability to enter into the agreement and alleging that the land was to be acquired for purposes not authorized by statute. The court also held that the district had the power and authority to purchase the Smedema property. We affirmed the trial court. We concluded that the Smedemas lacked standing to question the public purpose of the purchase. *Randolph School Dist. v. Smedema,* 99 Wis.2d 807, 301 N.W.2d 462 (Ct. App. 1980). We did not reach the issue whether the purchase was for a statutorily authorized purpose. The supreme court denied the Smedema's petition for review.

February 20, 1981, Edwin Smedema and Otto Loest brought a taxpayer action to enjoin the district board from expending district funds to make the purchase. Once again, Smedema's theory was that the district lacked the statutory power to acquire the parcel. The trial court held that its earlier decision was *res judicata* as to Smedema, and that the doctrine of *stare decisis* was dispositive of the same issue as to Loest. Loest appealed and we affirmed the trial court on different grounds. We held that Loest lacked standing because he failed to prove he was a taxpayer and elector

---

[2] Section 120.10(5), Stats. (1975), provides:

The annual meeting of a common or union high school district may:

. . . .

(5)    Designate sites for school district schoolhouses or teacherages and provide for the erection thereon of suitable buildings. . . .

of the district. *Smedema & Loest v. Board of Education of Randolph School Dist.,* 115 Wis. 2d 698, slip op. 341 N.W.2d 417 (Ct. App. 1983). The supreme court denied Loest's petition for review.

On April 19, 1984, Gerald Neis commenced this action to enjoin the district board from purchasing the Smedema parcel, alleging that the district lacked statutory authority to make the purchase. The parties stipulated that Neis was a taxpayer and elector of the Randolph School District and that the case should be submitted on the record of the prior two cases. The trial court dismissed Neis's complaint under the doctrine of *stare decisis.* Neis appeals.

## STANDARD OF REVIEW

The grant or denial of injunctive relief is within the sound discretion of the trial court and will not be reversed on appeal without a showing of abuse of that discretion. *Mercury Records v. Economic Consultants,* 91 Wis.2d 482, 500, 283 N.W.2d 613, 622 (Ct.App. 1979). The misapplication or misinterpretation of the law is an abuse of discretion. *Midwest Developers v. Goma Corp.,* 121 Wis.2d 632, 650, 360 N.W.2d 554, 563 (Ct.App. 1984).

The parties have stipulated to the material facts. The only question on appeal is the school district's statutory authority under sec. 120.10, Stats. (1975). The application of a statute to a particular set of facts is a question of law. *Id.* at 651, 360 N.W.2d at 564. We decide questions of law without deference to the trial court. *Ball v. District No. 4, Area Board,* 117 Wis.2d 529, 537, 345 N.W.2d 389, 394 (1984).

## STATUTORY AUTHORITY

The state may delegate portions of its power to school districts in order to accomplish the governmental function of establishing and operating public schools. *Buse v. Smith,* 74 Wis.2d 550, 563, 247 N.W.2d 141, 147 (1976). In exercising that delegated power, school districts act as state agencies. *Id.* It is fundamental that these "agencies have only such powers as are expressly granted to them or necessarily implied and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds." (Citation omitted.) *Kaiser v. City of Mauston,* 99 Wis.2d 345, 352, 299 N.W.2d 259, 264 (Ct.App. 1980).

Sections 120.10(5) and (6), Stats. (1975), empowered the electors at a common school district annual meeting to "[d]esignate sites for school district schoolhouses or teacherages . . ." and to "[v]ote a tax to purchase or lease suitable sites for school buildings, to build, rent, lease or purchase and furnish, equip and maintain schoolhouses, teacherages or outbuildings." Other subsections authorized the voting for taxes to purchase and operate transportation vehicles, sec. 120.10(7); operate district schools, sec. 120.10(8); discharge the district's debts and liabilities, sec. 120.10(9); create a sinking fund for current and future capital expenditures, sec. 120.10(10); and create a municipal department of recreation, sec. 120.10(11).

"Sec. 120.10, Stats., evidences the legislature's intent to enumerate the powers of the annual meeting. Where the legislature grants a series of powers under circumstances which suggest that the grant is exclusive, according to the doctrine of *expressio unius est ex-*

*clusio alterius,* powers not granted are not conferred." *State ex rel. Waldeck v. Goedken,* 84 Wis.2d 408, 420, 267 N.W.2d 362, 367 (1978). "Sec. 120.10 includes no catch-all provision giving to the meeting of electors any powers not specifically enumerated in sec. 120.10." *Id.* at 418, 267 N.W.2d at 366. Therefore, we will strictly construe the statute "to preclude the exercise of a power which is not expressly granted." *Racine Fire and Police Comm. v. Stanfield,* 70 Wis.2d 395, 399, 234 N.W.2d 307, 309 (1975).

We find no express provision within this section which empowers the Randolph district to vote a tax to purchase real property for an undesignated purpose. The only provision authorizing a common school district to acquire land is sec. 120.10(6), Stats. (1975), and then only as sites for school buildings.

■

Respondent contends that sec. 120.10(6), Stats. (1975), requires only that land acquired by the district must be "suitable" for a school building site. It suggests that this language does not compel that use, only that the land be "suitable." We disagree. Section 120.10 discloses no authorized use for district-owned land beyond the siting of schoolhouses, teacherages and outbuildings. Under respondent's theory, a school district could purchase virtually any land for any or no purpose. Chapter 120 pertains to school districts' operation of schools. There is no suggestion that the legislature intended a broad grant of power permitting school districts to operate land holding companies or businesses. Because the district has not declared its intent to use the Smedema parcel as a site for school buildings since

deciding to locate its grade school elsewhere, we conclude it has no power to purchase the land.[3]

## OTHER USES

Respondent argues that the potential uses suggested for the property are legitimate and appropriate for the purposes of public education. Therefore, it contends, the purchase falls within powers necessarily implied even though not expressly conferred to the school district. *State ex rel. Waldeck,* 84 Wis.2d at 418, 267 N.W.2d at 366. It cites *Iverson v. Union Free High School Dist.,* 186 Wis. 342, 202 N.W. 788 (1925), for the proposition that the district should be granted a reasonable measure of discretion in promoting the cause of education. It urges that we look to the provisions of sec. 120.49(4), Stats. (1975), as evidence of the legislature's true intent in this area. That section provides in part:

The school board of a city school district may:

. . . .

(4)   [P]urchase sites for school buildings *or other school uses.* . . . [Emphasis added.]

Section 120.49, Stats., deals with the powers of school boards within *city* school districts, and has no application to the case at hand. Were we to find it controlling here, much of sec. 120.10 would be rendered surplusage. This is an impermissible result. *Kollasch*

---

[3] Respondent suggests that this interpretation requires that its plans for the use of such site would have to be fully developed at the time of purchase. We do not think the requirements are this onerous. A purchase of the property for a legislatively authorized purpose would suffice.

316

*v. Adamany,* 104 Wis.2d 552, 563, 313 N.W.2d 47, 52 (1981). The legislature chose to retain separate provisions governing common school districts as contrasted with city school districts. We will not upset this categorization.

Even if a common school district were authorized to acquire land for uses other than school siting, we would be compelled to reverse under the facts of this case. Here the school district did not direct purchase of the Smedema parcel for *any* specific use. While a number of proposals for alternative uses were discussed, the record contains no evidence that any was ratified by the electors of the district.[4] We conclude that the district, under any view of the law, lacked authority to direct the purchase of land without having first determined the use to which the land would be put.

*By the Court.*—Judgment reversed and cause remanded with directions to enter an order enjoining the purchase of the land known as the "Smedema parcel" by the Randolph Common School District, and the expenditure of district funds by the school board for such purchase.[5]

---

[4] Respondent makes much of the vote of the electors of the school district at the special meeting of October 23, 1978. It characterizes the vote as a reaffirmation of the decision to purchase the Smedema parcel for other purposes *after* the decision to locate the grade school elsewhere. The minutes of that meeting disclose that the resolution adopted directed the board to "retain all rights" in the Smedema property. The rights the district then had were those of an option grantee. There is no evidence that the electors authorized the purchase of the land for any specific purpose.

[5] This injunction is limited to the facts of the case. We do not intend it to cover a future purchase and sale of the land properly made within the district's statutory authority.