## IN the MATTER OF the GUARDIANSHIP OF J.L.G., a minor, and K.G., a minor: W.L.M. and P.E.M., maternal grandparents of J.L.G. and K.G., minors, Petitioners-Appellants,†

v.

## P.H.G., a former guardian of the estate of J.L.G. and K.G., minors, Respondent.

Court of Appeals

*No. 87–0465. Submitted on briefs March 1, 1988.—Decided May 3, 1988.*

(Also reported in 426 N.W.2d 52.)

† Petition to review denied.

For petitioners-appellants, there were briefs by *William L. McCusker,* of *McCusker & Robertson, S.C.,* of Madison.

For respondent, there was a brief by *James W. Hammes* and *Cramer, Multhauf & Curran,* of Waukesha.

There was a brief by the guardian ad litem *George W. Love,* of Waukesha.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The grandparents of two minor wards seek to set aside a home building loan from the children's estates made to the guardian, P.H.G., used for additional living space for the wards. The grandparents allege that the court that appointed the guardian and approved the loan lacked jurisdiction; in the alternative that sec. 880.19(4)(c), Stats., absolutely bars loans of guardianship funds to the guardian; and that the court erroneously excluded evidence of previous alleged misconduct by the guardian. We conclude that the guardian's failure to name and notify the grandparents of the petition for guardianship was not jurisdictional, that sec. 880.21(2), Stats., authorizing supplementary use of the wards' estates for maintenance permits loans to the guardian for that limited purpose, and that exclusion of the evidence was not an abuse of discretion. We affirm.

P.H.G., an uncle of the minor wards, his nieces, now ages fourteen and sixteen, was appointed personal and estate guardian in Dane County after their parents died in separate accidents in 1979. He named the grandparents as interested persons in his original petition for guardianship. Five years later, however, when he repetitioned for appointment as guardian after a change of residence to Waukesha County, he neither named nor notified them as interested persons. After the reappointment, P.H.G. sought court authorization to borrow $12,000 from each ward's

account to pay for additional rooms on his new home to better accommodate his growing four-member family as well as his wards. The $24,000 represented the contractor's estimate of the cost of two additional bedrooms and a bathroom. The loans must be repaid when the wards reach age eighteen. P.H.G. earns approximately $55,000 a year. His former home netted $92,000 upon sale. The balance of the money for a new home, apart from the $24,000, was obtained from a separate bank loan. It is undisputed that P.H.G. could not obtain adequate funds for the new home without the guardianship loan. Each ward had accumulated just over $100,000 in principal and interest from a structured settlement arising out of their mother's wrongful death. The children also receive monthly settlement payments of $500 each and will each receive approximately $25,000 at age twenty-one as well. The children's grandfather, one of the appellants in this action, arranged the settlement. The children receive social security payments of $640 each per month, paid to P.H.G. for their care and maintenance. Attorney George Love, as guardian ad litem, recommended approval of the loan, but was unaware of sec. 880.19(4)(c). The court authorized the $24,000 loan, ordering it be secured by a second mortgage against P.H.G.'s new $146,000 home. In lieu of interest on the loan, it approved a "housing allowance" of $120 per month per child to P.H.G. from guardianship funds. This credit equaled the rate of interest P.H.G. paid on the separate bank loan obtained to pay for the balance of the cost for the home. The grandparents petitioned the court to vacate the order authorizing the loans, asked for a new guardian ad litem, and for an order reimbursing the estates for

the housing allowance and the GAL fees. After a new hearing, the petition was denied.[1]

Failure to name and notify interested persons in a guardianship proceeding is not jurisdictional. *Guardianship of Marak,* 59 Wis. 2d 139, 143–44, 207 N.W.2d 648, 650 (1973). Section 880.07(1) provides in part:

> Such petition shall state, so far as may be known:
>
> . . . .
>
> (h) The names and post-office addresses of the spouse and presumptive or apparent adult heirs of the proposed ward, and all other persons believed by the petitioner to be interested.

The term "interested persons" is not defined. *C.f.* sec. 851.21, Stats. (defining interested persons for probating a decedent's estate). Section 880.08 provides that notice need be given only to the presumptive adult heirs and to such other persons or entities as the court may require. Because the wards in this case are sisters, their individual rights to intestate succession, one from the other, would take precedence over that of the grandparents. *See* sec. 852.01(1)(d), Stats. The grandparents are therefore not presumptive or apparent adult heirs.

The *Marak* decision, authored by Chief Justice Hallows, held that failure to notify interested persons, even in a deliberate attempt to obtain a guardian with the least amount of opposition, is not fatal. *Id.* at 143–44, 207 N.W.2d at 650. *Marak* held that sec.

---

[1]At an earlier hearing in Dane County, P.H.G. stipulated to repay the wards' estates $1,500 each and turn the estate guardianships over to a corporate guardian. The stipulation was the result of a challenge to expenditures raised by the grandparents.

879.01, Stats., expressly provides that no defect of form or substance in any probate petition shall invalidate any proceedings. This section applies to proceedings in guardianships and is not restricted to the traditional area of probate. *Marak,* 59 Wis. 2d at 143–44, 207 N.W.2d at 650. As *Marak* suggests, if the guardian was motivated to bypass the grandparents, it is most uncommendable. The circuit court, however, had jurisdiction. Further, because a rehearing was held on the merits after the grandparents appeared, no prejudice resulted.

The grandparents next argue that, even with jurisdiction, the loans to P.H.G. violate sec. 880.19(4)(c): "No guardian shall lend guardianship funds to himself." The interpretation or construction of a statute is a question of law that we review de novo. *See Neis v. Board of Educ.,* 128 Wis. 2d 309, 313, 381 N.W.2d 614, 616 (Ct. App. 1985). Ordinarily, we will not resort to judicial rules of interpretation and construction unless the statute is ambiguous. *B.A.C. v. T.L.G.,* 135 Wis. 2d 280, 287, 400 N.W.2d 48, 52 (Ct. App. 1986). Nonetheless, we will construe a statute whose meaning is clear if a literal application would lead to an unreasonable or absurd result. *Coca-Cola Bottling v. La Follette,* 106 Wis. 2d 162, 170, 316 N.W.2d 129, 133 (Ct. App. 1982). Finally, if different provisions of a statute appear to conflict, then they are to be construed harmoniously to give effect to the statute's primary purpose. *State v. Fouse,* 120 Wis. 2d 471, 477, 355 N.W.2d 366, 369 (Ct. App. 1984).

Here, the language of sec. 880.19(4)(c), part of sub. (4), entitled "Investments," must be harmonized with

sec. 880.21, entitled "Use of estate for benefit of wards":

> (2) ... If any minor has property ... suffi-
> cient for ... maintenance ... in a manner more
> expensive than his or her parents can reasonably
> afford, regard being had to the situation and
> circumstances of the family, the expenses of the
> minor's ... maintenance may be defrayed out of his
> or her property in whole or in part, as shall be
> judged reasonable and be directed by the circuit
> court.

Maintenance includes shelter. Black's Law Dictionary 859 (5th ed. 1979). Section 880.21 permits use of a ward's estate to provide more expensive housing in appropriate cases.

Section 880.19 reflects the guardian's common-law duty to avoid conflicts of interest when investing a ward's estate. One of the early cases the grandparents rely upon, *Hutson v. Jenson,* 110 Wis. 26, 40–41, 85 N.W. 689, 694 (1901), states: "The application of [the] rule [against borrowing guardianship funds] is not dependent upon the existence either of fraud or mismanagement; [but rather is founded upon] public policy." It is instructive to note, however, the reference in *Hutson* to the guardian's failure to apply to the court in advance of borrowing the funds for a support allowance for the children. *Hutson,* a common-law decision, implies that a guardian could, under appropriate circumstances and with court approval, borrow wards' funds for maintenance. The loan here was not an investment but was for maintenance of the wards. Further, if, as the grandparents argue, the wards' funds cannot be borrowed for

maintenance, it leads to an absurd result. A guardian could spend funds for maintenance outright but would be barred from arranging to pay it back.

The addition to the home represents the application of the wards' estates for maintenance, in a manner consistent with the value of their estates, but that the guardian could not provide from his funds. At the time the wards reach majority and leave the guardian's home, they no longer benefit from the added rooms and repayment is required. The dissent would conclude either that the wards' estates may not be used for their maintenance, thus requiring a standard of living below that which they can afford, or require an arrangement precluding repayment of the funds to their estates when they reach majority.

The grandparents argue that the trial court also erroneously refused to admit evidence of P.H.G.'s alleged misappropriation of guardianship funds in Dane County. Decisions on relevance are left to the discretion of the trial court and will be accepted unless there has been an abuse of discretion. *Keithley v. Keithley,* 95 Wis. 2d 136, 140, 289 N.W.2d 368, 371 (Ct. App. 1980). The Dane County accounting had been approved in separate proceedings in that county. Pursuant to a stipulation, P.H.G. agreed to remove himself as guardian of the estates, and that had already been accomplished at the time of the present proceedings. The trial court therefore did not abuse its discretion by excluding prior alleged misconduct evidence.

*By the Court.*—Orders affirmed.

CANE, P.J. (dissenting) I dissent on the basis that sec. 880.19(4)(c), Stats., is not ambiguous and

clearly prohibits the guardian from loaning guardianship funds to himself. The language is simple and straightforward. The subsection provides in its entirety:

> (c) No guardian shall lend guardianship funds to himself.

The majority's attempt to justify the guardian's loan to himself on the theory that we must harmonize this prohibitive statute with sec. 880.21(2), Stats., is unpersuasive. Indeed, the guardian ad litem himself conceded in a letter to the trial court that the loan arrangement "runs contrary to the provisions of section 880.19(4)(c)," and that he had negligently failed to inform the court of the statute.

Nor am I convinced that *Hutson v. Jenson,* 110 Wis. 26, 85 N.W. 689 (1901), can be construed to allow a guardian to borrow money from the ward when it is used for maintenance and not as an investment. In *Hutson,* while acting as guardian for her children's trust account, the mother loaned trust funds to herself and in return issued to each of her wards a promissory note secured by a third mortgage on her property. The supreme court disapproved the transaction, noting that guardians must not confuse their trust capacity and their personal capacity when dealing with trust funds. The court stated that the rule against borrowing guardianship funds was based on sound public policy,

> which would exclude all necessity of investigation of either the honesty or the wisdom of such dealings in a dual capacity. Selfish instincts of human kind are so persistent that such dealings are fraught with peril to the fiduciary interests, and safety demands that the rule be absolute.

*See id.* at 40–41, 85 N.W. at 694.

Similarly, to construe sec. 880.19(4)(c) to be anything other than an absolute rule allows potential abuse at the expense of the children's guardianship funds. As the makers of public policy in this area, the legislature has spoken, and I think wisely. The potential conflict between the guardian's personal interest and the interests of the children demands that no exceptions be made to this statute. The guardian is bound to protect the interests of the wards, and the funds are entrusted to the guardian's care solely for the children's benefit. No exception is allowed pursuant to court order. The courts are not to be involved in approving or determining whether the guardian's loan to himself is appropriate. The selfish instincts of human nature persist such that the temptation to loan funds to oneself, no matter how righteous the intentions, demands our most anxious care that the wards suffer no undue loss.

Contrary to the majority's perception, these concerns for the safety of the guardianship funds are not alleviated merely because the loan's purpose is for maintenance. The present case is illustrative. Here, the guardian petitioned to borrow $24,000 from the guardianship accounts to construct additional living space to better accommodate his own family as well as the two minor children. The guardian issued to the children a promissory note due on each child's eighteenth birthday, ostensibly secured by a second mortgage subordinate to a first mortgage issued to a commercial lender. Categorizing the loan as maintenance provides no assurance that the security will prove adequate to realize the expectations of the children at a future date.

Under the guise of maintenance for the children, the guardian also made arrangements to have the $240 monthly interest on the house attributed to maintenance. This amount is in addition to the $1,280 monthly social security payments he receives for the children, despite the absence of a finding that the social security payments were inadequate for the children's maintenance. Consequently, the interest on the loan is never paid, nor is the principal due until the children reach age eighteen.

The majority's opinion establishes precedent for many types of possible malfeasance. One can imagine numerous ways a guardian could loan guardianship funds to himself or herself under the rationale that "it is for the children's benefit." In fact, it is alleged in this case that the guardian previously withdrew substantial funds from the guardianship accounts for the purchase of a new station wagon, showing it on the annual account as "trans." Therefore, I would reverse and remand the matter to the trial court with directions that the loan, interest, and guardian ad litem fees be replaced into the guardianship funds.