UNITED STATES of America, Community Action Against Poverty of Greater Indianapolis, Inc., Plaintiffs-Appellees,

v.

Robert DeFRANTZ, Sr., Defendant-Appellant.

No. 82–2479.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1983.

Decided May 31, 1983.

John O. Moss, Indianapolis, Ind., for defendant-appellant.

Harold Bickham, Asst. U.S. Atty., Indianapolis, Ind., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

██ The district court entered a default judgment for $187,000 in favor of the plaintiffs because the defendant, DeFrantz, had failed to appear for his deposition, and we must consider whether this sanction was so disproportionate that the judgment should be set aside. The applicable legal principles are not disputed. Rule 37 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment as a sanction for a defendant's failure to show up at his deposition, whether or not the court has ordered him to attend, Rule 37(b)(2)(C), (d); but the sanction is proper only if the failure is willful; as in all discovery matters the district court's discretion is broad. *Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617 (7th Cir.1982).

DeFrantz, a man now in his late 50's or early 60's, was the executive director of Community Action Against Poverty of Greater Indianapolis, Inc., an anti-poverty agency that received funds from the federal government. In the fall of 1980 a federal grand jury indicted him for diversion of more than $100,000 in CAAP funds to his personal use between 1977 and 1979. Shortly before the indictment was handed down he moved to San Francisco. His failure to return on time for a pretrial hearing caused his bond to be revoked, but it was reinstated on condition that he not leave the Indianapolis area, to which he had returned in March 1981. He moved to have this restriction lifted and at a hearing on the motion on July 20, 1981, presented medical evidence that his heart condition would permit him to travel to San Francisco.

On March 12, 1982, the government both dismissed the indictment against DeFrantz and brought this civil suit against him under the False Claims Act, 31 U.S.C. §§ 231 *et seq.*, to recover the federal funds he had diverted. CAAP joined in the suit as an additional plaintiff, seeking restitution and predicating federal jurisdiction on diversity of citizenship—DeFrantz being by now a citizen of California. On the same day the government noticed DeFrantz's deposition for March 25 in Indianapolis, but at DeFrantz's request the date was moved up to April 7.

The travel restrictions on DeFrantz had expired with the dismissal of the indictment, and sometime between March 25 and 30 he flew to San Francisco. On April 1 he was examined by a doctor who told him it would be inadvisable for him to attend the deposition in Indianapolis, and on April 5 he called the government's lawyer and told him he would not show up, both on health grounds and because he had not been able to locate all of the documents that the government's subpoena duces tecum required him to bring to the deposition. The government's lawyer testified at the default hearing that he had offered to continue the deposition to a later date if DeFrantz or his attorney would sign a written stipulation continuing it and that DeFrantz had refused.

DeFrantz did not, of course, show up for his deposition on April 7, and the government moved for entry of a default judgment against him. The district court denied the motion, but ordered DeFrantz to appear for his deposition in Indianapolis on July 13. DeFrantz's lawyer moved to cancel this order. Attached to the motion was a letter from a Dr. Kelly in San Francisco, who had examined DeFrantz on June 17 and who stated, "Mr. DeFrantz remains in a precarious position. He is on multiple drugs to control his congestive failure and his angina pectoris. Even leading a markedly sedentary life he is in discomfort with emotion and the activities of daily living. On the date of June 17th his weight was stable. His pulse was 105. He had a gallop rhythm indicating latent or frank heart failure. No evidence of gross congestive

failure was present but he is on a regimen of limited activity, avoidance of psychological stress, and drugs which are barely keeping him stable. I again state my views that a trip to Indianapolis I view as a threat to his life."

The court refused to cancel the deposition. DeFrantz did not show up for it, the government again moved for entry of a default judgment, and this time the court granted the motion. The court stated, "Standing alone, the refusal to appear on April 7 justifies sanction; the subsequent defiance of this Court's order of June 3 aggravates the situation." The court concluded that only default would be an effective sanction because DeFrantz's deposition was essential to the plaintiffs' preparation of their case. The court added, "Nor are plaintiffs required to journey to San Francisco, at public expense, to attempt a deposition there. Defendant has made no suggestion that he would not resist a deposition there, and circumstances strongly indicate he would do so." The court noted that DeFrantz's "claimed inability to travel arises only because defendant left the jurisdiction in the first place. And there is substantial evidence that travel is no difficulty for defendant when it is in his interest. Defendant's conduct since the filing of this suit can only be described as defiance of repeated orders of Court, and of his own promises."

DeFrantz's strongest argument against the entry of the default judgment is that whatever may previously have been true, by June 17, 1982, when Dr. Kelly examined him in San Francisco, his health had so deteriorated that a trip to Indianapolis to be deposed would have endangered his life, while the government could easily have deposed him in San Francisco. This argument has enough merit that had the district court decided to hold off action on the government's motion for entry of default judgment till the government attempted to take DeFrantz's deposition in San Francisco, it would not have been acting improperly. But the court did not abuse its discretion in acting as it did.

The events culminating in DeFrantz's failure to show up on April 7 cast grave doubt on his good faith. He had been well enough to fly to San Francisco at the end of March, and though it is possible that the flight impaired his health and that this is why he had a medical examination on April 1, his resourceful counsel has never advanced this particular suggestion—thus making us wonder, as did the district court, how DeFrantz could have been well enough to fly from Indianapolis to San Francisco at the end of March but not well enough to fly back again a week later.

■ In these circumstances it was incumbent on DeFrantz's counsel—or so at least the district court could reasonably have concluded—to do more than attach Dr. Kelly's letter to a perfunctory motion to cancel the deposition. He could have submitted an affidavit from Dr. Kelly. He could have submitted an affidavit from DeFrantz explaining if he could how it was that he had been able to fly to San Francisco but not back. He should have proposed a time and place for a deposition in San Francisco; and considering DeFrantz's past defaults, and the fact that the deposition would be within the jurisdiction of the federal district court in San Francisco as well as of the court in which the plaintiffs' suit was pending, see Fed.R.Civ.P. 26(c), he should have agreed to waive any objections to the deposition or at the very least have agreed that any such objections be referred to the court in Indianapolis. See Note of Advisory Committee to Fed.R.Civ.P. 26(c). He did none of these things and thereby confirmed the district court's doubts about his good faith. The district court had enough evidence to justify the extreme sanction that it imposed.

■ Rule 55(b)(2) of the Federal Rules of Civil Procedure requires a hearing after entry of default judgment if "necessary ... to determine the amount of damages ...." It was not necessary here. The motion for a default judgment specified the amount that the district court awarded. DeFrantz thus knew the exact amount the plaintiffs were claiming—yet his counsel never questioned the amount. In these cir-

cumstances a hearing on damages was not required. *Davis v. Fendler*, 650 F.2d 1154, 1162 (9th Cir.1981); *Hindmon v. National-Ben Franklin Life Ins. Corp., supra,* 677 F.2d at 622.

Finally, the defendant's challenge to the district court's subject-matter jurisdiction is frivolous.

AFFIRMED.