COURT OF APPEALS
DECISION
DATED AND FILED

June 9, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2018AP1971**

Cir. Ct. No. 2009CV62

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

CORLIS DANIELS AND B. R.,

PLAINTIFFS-RESPONDENTS,

V.

NATHANIEL ALLOWAY A/K/A NATHAN BRUCE ALLOWAY,

DEFENDANT-APPELLANT,

DALTON J. BIRD A/K/A DALTON JAMES BIRD-SOMAN,
GREGORY A. BRADLEY A/K/A GREGORY ADAM BRADLEY,
FOREST COUNTY POTAWATOMI COMMUNITY INSURANCE DEPARTMENT,

DEFENDANTS.

---

APPEAL from an order of the circuit court for Forest County: WILLIAM F. KUSSEL, JR, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Nathaniel Alloway appeals from an order denying his motion to vacate a default judgment entered after his failure to appear at trial. Alloway argues he did not have notice of the trial date, and the circuit court therefore erred by entering the judgment and then refusing to reopen it.  We reject his arguments and affirm.[1]

## BACKGROUND

¶2      On June 24, 2009, Corlis Daniels commenced a civil lawsuit alleging members of the Forest County Potawatomi chapter of a criminal gang called "The Bloods" confronted Daniels at her residence when she opposed efforts to recruit her sons into the gang.  During the confrontation, Alloway allegedly beat her severely with a sock containing a rock.  Daniels suffered massive injuries from the beating, including a crushed eye socket, a collapsed sinus cavity, complete loss of vision in one eye, and permanently impaired vision in her other eye that required monthly injections to prevent it from failing.  Despite these treatments,

---

[1] We note that both parties improperly refer to "Plaintiff-Respondent" and "Defendant-Appellant" throughout their briefs, in violation of WIS. STAT. RULE 809.19(1)(i) (2017-18), which requires references to the parties by name, rather than party designation. Counsel are admonished that future violations of the rules of appellate procedure may result in sanctions.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Daniels was still in danger of losing that eye. Medical payments made on behalf of Daniels as of the date of trial were $177,870.45.[2]

¶3 Proper service of the summons and complaint was obtained on all defendants. Alloway was a minor living at his mother's residence at the time of the assault, and substitute service was made on his mother at her residence. A guardian ad litem (GAL) was appointed for Alloway, and an answer was filed denying the allegations of the complaint. Alloway participated in the lawsuit until August 6, 2013, when Alloway turned eighteen years old and his GAL withdrew because Alloway was no longer eligible for GAL services. The GAL's motion to withdraw was served upon Alloway at his mother's residence, and the motion specifically stated, "The Defendant has the opportunity to obtain individual counsel."

¶4 Thereafter, a scheduling order dated April 29, 2014 established dates for naming expert witnesses and filing permanency reports, as well as a court-ordered mediation. The order also stated that if the mediation was unsuccessful, pretrial and trial dates would be established. A subsequent scheduling order dated December 5, 2016, set a pretrial date, as well as trial dates for February 27 and 28, 2017, respectively. On February 7, 2017, a motion for a court trial was filed. A copy of the motion was mailed to Alloway's mother's residence, but the envelope was returned stamped "RETURN TO SENDER" and "Does not live Here!" handwritten on the envelope. The circuit court granted the motion for a court trial, without objection.

---

[2] Daniels' minor son, who is also a plaintiff, witnessed his mother's beating, and he incurred $6801.14 in medical payments.

¶5 After his GAL withdrew, Alloway neither retained counsel nor appeared in any court proceeding, until approximately one year after the judgment was entered when he moved to vacate the judgment and reopen the proceedings pursuant to WIS. STAT. § 806.07(1)(g) and (h). With the exception of a representative of the party seeking subrogated medical payments, none of the defendants appeared at the trial.

¶6 The circuit court entered findings of fact, conclusions of law, and a judgment following the bench trial. The court found Alloway and other defendants in default on liability for failing to appear at trial. The court also found:

> [I]t is clear that the behavior of these three individuals was willful. Their actions were outrageous, they were malicious, they were—they were evil, they were ill willed, gross transgressions on the propriety that individuals have to other individuals ….
>
>  ….
>
> The injuries were done with full knowledge I believe of what would happen because it's clear that they hit someone with apparently a rock or a brick, most likely a rock in a sock, hitting an individual in the face while one party or the parties are asking whether I should do it, whether I should do it, other people are laughing. All three parties are equally involved in this.
>
> Perhaps one party swung the rock or swung the instrument, or the weapon but all of them participated, they all egged each other on, they watched in concert, they are all liable for what they have done.

¶7 The circuit court further found that "[n]o act or omission on the part of the Plaintiff contributed in any way to her injuries." The court then assessed damages for medical payments; past and present pain, suffering, and disability; and punitive damages, jointly and severally, against Alloway and the other

defendants.[3]   Garnishment proceedings were subsequently pursued against the various defendants.

¶8      Approximately one year following the trial, Alloway moved to vacate the judgment and reopen the proceedings, claiming he had "no foreknowledge" of the trial date.  Alloway alleged that his GAL had told him prior to withdrawing that his case was "going away."   After his GAL withdrew, Alloway contends he had no reason to believe his case was still open.  Had he known his case was "still open and going to trial," Alloway claimed that he would have asserted self-defense.  In this regard, Alloway contended that Daniels struck him first, and she tried scratching him before he hit her.  Alloway insisted that had he been notified of the trial date, he "would have testified that his intent was to push Plaintiff away, not physically harm her."

¶9      The circuit court denied the motion to vacate the judgment.  Alloway now appeals.

## DISCUSSION

¶10     We will not reverse a circuit court's grant of default judgment unless the court has erroneously exercised its discretion.  *See* ***Midwest Developers v. Goma Corp.***, 121 Wis. 2d 632, 650, 360 N.W.2d 554 (Ct. App. 1984).  A default

---

[3] The circuit court's findings as to damages included medical bills totaling $184,671.59, for which there was a contractual right of subrogation.  In addition, damages included past pain and suffering of $500,000; future pain and suffering of $1,000,000; past and future disability "and the resulting loss of the enjoyment of life because of the blindness in one eye, substantial loss of vision in the other eye resulting in her inability to read and do bead work, and the continuing depression she experiences as a consequence of those losses and others, the sum of $1,000,000;" and, as punitive damages "because of the Defendants' vicious, willful, wanton, outrageous, and intentional acts in complete disregard of the Plaintiff's rights, the Court awards the sum of $1,000,000."

judgment may be rendered against any party who has appeared in the action but fails to appear at trial. WIS. STAT. § 806.02(5). A circuit court's denial of a motion seeking to vacate a default judgment is also a discretionary act. *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977). In reviewing discretionary acts, we examine the record to determine whether the court logically interpreted the facts, applied a proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *See State v. Keith*, 216 Wis. 2d 61, 69, 573 N.W.2d 888 (Ct. App. 1997).

¶11 Alloway first suggests that he was entitled to vacate the judgment based on WIS. STAT. § 806.07(1)(g). That section allows relief from judgment where "[i]t is no longer equitable that the judgment should have prospective effect." However, both in the circuit court and now on appeal, Alloway does not even attempt to address subsec. (1)(g), other than to quote the text of the subsection once in his introductory paragraph. Regardless, we have held that § 806.07(1)(g) "applies only to equitable actions in which the decree has prospective effect." *See Nelson v. Taff*, 175 Wis. 2d 178, 187-88, 499 N.W.2d 685 (Ct. App. 1993). The federal rule analogue to § 806.07(1)(g) was intended to preserve for the courts the power to alter final judgments having an ongoing impact when the facts as determined in the original action have changed to a degree that the final judgment must also be changed to comport with the new conditions. *See State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 543-44, 363 N.W.2d 419 (1985). Alloway does not argue that the judgment here has prospective effect in this sense. Section 806.07(1)(g) simply is not applicable to the facts of this case.

¶12 Alloway also argues he was entitled to relief from the judgment under the catch-all provision of WIS. STAT. § 806.07(1)(h), which allows relief for

"[a]ny other reasons justifying relief from the operation of the judgment." Under subsec. (1)(h), relief is appropriate only when extraordinary circumstances are present. *See Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶35, 326 Wis. 2d 640, 785 N.W.2d 493. In determining whether extraordinary circumstances exist, the circuit court balances the competing values of finality and fairness. *Id.*, ¶33.

¶13 Regarding WIS. STAT. § 806.07(1)(h), Alloway again argues relief from the judgment is justified on the grounds that he had not received notice of the trial date. WISCONSIN STAT. § 801.14(2) governs service and filing of pleadings and other papers, and provides that service upon the attorney or upon the party "shall be made by delivering a copy or by mailing it to the last-known address …." The mailing address on file with the circuit court was Alloway's mother's address. There is no dispute that Alloway was duly served with the summons and complaint at his mother's residence, and that he appeared and filed an answer denying the allegations. Thereafter, all notices, correspondence, and other pleadings were sent either to that address, or to his attorney when he was represented by counsel. As the circuit court stated: "So when I look at all that, from what I've seen is that the last known address appeared to be the [mother's] address. That's where the mail was going, and it didn't seem to be coming back except before—a few days before trial."

¶14 Nevertheless, Alloway claims "there was evidence that [Daniels'] counsel knew Mr. Alloway had moved out of state," but her counsel did not send Alloway notice of the trial date at that address. In this regard, Alloway also contends the circuit court "knew and even stated on the record, that [Alloway] was 'living in California,' and that the Circuit Court had received mail returned to it addressed to [Alloway's] mother with a notation that [Alloway] 'no longer lives

here.'" Alloway asserts that "[t]his plain acknowledgement of [Alloway's] California address makes the notification insufficient."[4]

¶15 At the hearing on the motion to vacate the judgment, Daniels' attorney stated: "We did receive a certificate of tribal enrollment pretty much at the last minute. As I recall the hearing was held on a Tuesday. I believe that we learned on Friday that [Alloway] was alleged to be living [in] California." Daniels' attorney, however, also indicated that upon receipt of that information, notice was sent to Alloway using the California address Alloway had provided to his tribe, but that envelope was also returned to counsel as undeliverable.

¶16 Alloway argues that Daniels' counsel "did not bother to attempt contact with that [California] address until … almost two months after trial." This argument is a nonstarter. As the circuit court properly recognized, it is not the duty of the court or the plaintiff to track down a defendant in a civil case once a party appears and participates in the action. We conclude the court and Daniels' attorney were entitled to rely on the address to which all prior notices had been sent until Alloway advised the court and the other parties of a change of address. Alloway did not do that. At no time prior to trial was either the court or Daniels' attorney notified that Alloway was no longer receiving mail at his mother's residence. Any lack of notification of a subsequent address was the result of

---

[4] Alloway also argued in the circuit court that notes from his GAL's file suggested that around the time of her motion to withdraw, she learned that her client was "living in Yuma, AZ" and had "left almost a year ago." Alloway further argues that nothing in the court file suggests the GAL alerted the court her client had "moved out of state." This argument is also a nonstarter. If there is a question regarding whether Alloway's GAL failed to alert the court of an updated address, that is a matter between Alloway and his prior counsel. However, "Yuma, AZ" is not an address, any more than writing on an envelope "does not live here" or "return to sender."

Alloway's own inactions in failing to advise of any updates to his address. In short, the service and filing requirements of WIS. STAT. § 801.14(2) were satisfied.

¶17 We note that Daniels' counsel advised the circuit court that he investigated a number of Alloway's court cases, and he noted a Milwaukee County case that revealed at the time of the GAL's withdrawal there was a Milwaukee County traffic matter depicting Alloway's mother's residence as his address. Even after the trial, Alloway continued to use his mother's residence as his address in court proceedings. A Langlade County citation dated January 6, 2018, revealed that Alloway was stopped for speeding, during which a records check revealed his mother's residence as a current address. Yet, Alloway's attorney told the circuit court at the August 8, 2018 hearing on the motion to reopen that Alloway "does have the same address that was in the exhibit presented in the trial in San Diego. I verified that." As the circuit court noted at that hearing:

> And then you've got the state of Wisconsin. You have to put down your proper residence. You can't use a fake residence or a false residence. In fact, you're required to change registration and so on within a short period of time, I think it's within 30 days, if you change addresses with the state.
>
> And, of course, it's very important when you're driving to have the proper driver's license because that's what's used for your citations if you're mailed a citation, and if it's the wrong address, then it doesn't come back. Well, they're going to have a default judgment. And in this case there was a nonpayment of some fines so …. And that's, again, the person's ben -- it's to their benefit and their responsibility to keep all the parties, the agencies aware of their addresses.

¶18 Alloway further argues he had no reason to believe the case was still open. Indeed, he claims that he had "good reason to believe that there was no

9

reason for him to retain new counsel." Alloway notes that an affidavit in support of a motion to withdraw by Daniels' former attorney "advised the Court (and Mr. Alloway's Guardian Ad Litem) that this case appeared to be uncollectible and not worth pursuing." Alloway claimed he "recalls being told by his Guardian Ad Litem at this time that 'this case was going away' or words to that effect."

¶19    This argument merely begs the question as to whether Alloway reasonably thought the case was closed, given that Alloway does not allege that his GAL told him the case was dismissed. In fact, Alloway was served with a notice of appearance of Daniels' new counsel in the eighteen-month interim before his GAL withdrew. Quite simply, although Alloway knew the seriousness of the case, he did nothing to confirm whether the case had in fact been terminated. Indeed, the circuit court made a finding that Alloway took very little interest in this case.

¶20    Alloway also claims that he has a meritorious defense to the action. Alloway argues that had he been present at trial, "he would have had myriad defenses to raise. He would have asserted self-defense." Yet, Alloway fails to develop an argument why self-defense would be a meritorious defense to the action—and he does not specify any other of the "myriad defenses" he would raise.

¶21    Moreover, self-defense was not pled as an affirmative defense in Alloway's answer to the complaint. Alloway contends such an affirmative defense was unnecessary, as he would have testified at trial that he intended Daniels no harm, thus negating the intent element of battery. The complaint, however, alleged numerous causes of action other than battery, including "causing injury by criminal gang activity," civil conspiracy, and "concerted action." In any

10

event, we need not further address this issue, as Alloway does nothing to show why his claim of self-defense would likely be successful.

¶22     At the hearing on the motion to vacate the judgment, Alloway's attorney represented, "Mr. Alloway's defense is I was being attacked and I put my guard up and in that exchange there was an accident where there was an injury." In an affidavit in support of the motion, Alloway averred:

> Ms. Daniels took a swing at me.  When she swung at me, I reflexively leaned back to avoid the punch.  When I leaned back to avoid the punch she scratched by face and ripped my t-shirt off of me in one motion.  In the commotion and trying to protect myself, I unintentionally made contact with her.  I didn't even know I struck her until we both backed up and she was holding her face telling me I'm going to pay for this.  It was not my intention to harm her, I was just trying to push her away from me so I wouldn't be hit again.

¶23     Daniels' severe injuries stand in utter contrast to Alloway's assertion of unintentional contact while trying to protect himself from a woman more than thirty-five years his senior.  As the circuit court found, "the injuries were massive … there is an eye that is gone … eye sockets were crushed, the sinus was crushed …."  In his briefs to this court, Alloway merely contends in conclusory fashion that "he would have testified that his intent was to push [Daniels] away, not physically harm her."  This assertion alone fails to establish that there is a meritorious defense to the action.

¶24     Finally, Alloway argues Daniels never gave him notice of the damages she was seeking prior to default judgment, in violation of WIS. STAT. § 806.02(2).  However, § 806.02(2), by its plain language, pertains to a default upon a failure to join issue.  Here, Alloway had appeared and answered the complaint, denying the allegations.  Issue was joined—default on liability was

granted as a sanction due to Alloway's failure to appear at trial. This was not a situation where a party failed to appear initially and issue was not joined.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.