**Dennis WAUCHOP, Brian Noonan, Jason Noonan, Patrick Noonan, and John Noonan, Plaintiffs,**

v.

**DOMINO'S PIZZA, INC., Thomas S. Monaghan, Scott Halvorsen, and Christopher Braden, Defendants.**

**No. S90–496 (RLM).**

United States District Court, N.D. Indiana, South Bend Division.

May 26, 1992.

---

Robert J. Pavich, Chicago, Ill., for plaintiffs.

C. Roy Peterson, Nancy Shaw, Chicago, Ill., Thomas Brunner, Paul Peralta, South Bend, Ind., for Domino's Pizza & Thomas Monaghan.

Arthur A. May, South Bend, Ind., for Scott Halvorsen.

John P. McQuillan, Terri Springman, Merrillville, Ind., for Christopher Braden.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Some observers of civil litigation believe that discovery rights will be taken from lawyers within the next decade or two, to be replaced by a system of standard disclosures. That belief is based on exaggerated perceptions of the failure of cooperative, properly limited discovery without court intervention. The method in which discovery has been conducted in this case, unfortunately, lends credence to such perceptions.

Once again, this cause comes before the court on discovery-related motions. The plaintiffs filed a motion to strike defendant Thomas Monaghan's answer and summary judgment motion and for the entry of default against Mr. Monaghan for his failure to appear for deposition; Mr. Monaghan responded by moving to strike the notice of his deposition. The plaintiffs have also filed a motion to strike the answer of defendant Domino's Pizza, Inc. ("Domino's") for its failure to produce witnesses for deposition and respond to discovery. In their motion directed to Domino's, the plaintiffs ask the court to enter default against Domino's or, in the alternative, to order Domino's to produce all deponents in Chicago and provide all outstanding discovery by a date certain. The court assumes familiarity with the factual background and previous orders in this action.

### Motion for Entry of Default Against Mr. Monaghan and Motion to Strike Mr. Monaghan's Deposition

During a telephonic status conference on January 24, 1992, the court ordered the parties to complete all outstanding written

discovery and all previously noticed depositions by February 28. Mr. Monaghan's deposition previously had been noticed. The court also afforded the plaintiffs until March 16, to file a response to Mr. Monaghan's motion for summary judgment. During the status conference, counsel for Domino's and Mr. Monaghan stated that she would have a problem producing Mr. Monaghan for deposition.

Mr. Monaghan had moved for summary judgment on August 5, 1991, contending that he should not be held personally liable for the accident that forms the basis of this action. His motion is supported by his own affidavit, which stated that he was not personally involved in the operation of the franchise owned by defendant Scott Halvorsen, that he never had any dealings with defendant Christopher Braden, and that his only conduct in relation to the 30–minute guarantee was in his capacity as a corporate director or officer. In his affidavit, Mr. Monaghan states that the 30–minute guarantee policy went through corporate channels and was implemented after discussions with franchisees. He also states that the guarantee stresses safe driving. After Mr. Monaghan's motion for summary judgment was filed, the plaintiffs requested additional time to conduct discovery before responding to the motion. Fed. R.Civ.P. 56(f).

The plaintiffs planned to test the assertions in Mr. Monaghan's affidavit by deposing Mr. Monaghan and other employees of Domino's. Mr. Monaghan, however, has refused to make himself available for deposition for several reasons. Mr. Monaghan's motion to strike the notice of his deposition reiterates the arguments in his summary judgment motion; he claims that he is not personally liable to the plaintiffs because the only allegations against him relate to his implementation of the 30–minute policy in his capacity as a director, shareholder, and chief executive officer of Domino's. He further reiterates that he was never directly involved with Mr. Braden or with the operation of the franchise operated by Mr. Halvorsen.

Mr. Monaghan also claims, surprisingly, that the 30–minute policy is not an issue in this case. He states, as Domino's argued in response to an earlier discovery motion, that no reasonable trier of fact could find that Mr. Braden was trying to comply with the 30–minute policy when the accident occurred, because at the time of the accident Mr. Braden was returning to the store from a pizza delivery. Further, Mr. Monaghan claims that the 30–minute policy could be an issue only if Mr. Braden was speeding at the time of the accident, and that the only evidence that Mr. Braden was speeding is John Noonan's speculation during his deposition based on the speed with which Mr. Braden's car passed Mrs. Wauchop's vehicle. Finally, Mr. Monaghan argues that he has no knowledge of the policies and procedures of Domino's that cannot be obtained through written discovery or deposition of other Domino's employees.

Mr. Monaghan's counsel claims that the parties agreed that depositions could be taken after the deadline established at the January 24 status conference. She also claims that she informed the plaintiffs' counsel that she would not object to a further extension of time for the plaintiffs to file a response to Mr. Monaghan's summary judgment motion, and that the parties agreed that the plaintiffs would wait until after the depositions of other Domino's employees before asking the court to decide the issue of Mr. Monaghan's deposition.

The plaintiffs assert that they need to depose Mr. Monaghan regarding the statements in his affidavit, that Mr. Monaghan was named as a defendant because the plaintiffs believe he is personally liable, and that they expect to depose him as they would any defendant. The plaintiffs filed the motion because Mr. Monaghan refused to be deposed. They would have preferred to depose other Domino's employees before Mr. Monaghan, but Domino's did not make other employees available for deposition, except those produced pursuant to Fed. R.Civ.P. 30(b)(6). The plaintiffs seek to avoid further delays in discovery and briefing.

■ Although counsel may have agreed to an extension of the deadlines for depositions and briefing, counsels' agreement alone does not constitute good cause for extending deadlines pursuant to Fed. R.Civ.P. 16(b).

The arguments regarding the relevance of the 30–minute policy have been raised before in an effort to avoid discovery, and these arguments are without merit for the purpose of restricting discovery. The plaintiffs are entitled to conduct discovery on the relationship between the 30–minute policy and the accident.

Mr. Monaghan argues that as the chief executive officer of Domino's, he should not be required to appear for a deposition when the same discovery can be conducted through other employees, citing *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985), and *Hughes v. General Motors Corp.*, 18 Fed.R.Serv.2d 1249 (S.D.N.Y. 1974).

The court disagrees. The plaintiffs are entitled to take Mr. Monaghan's deposition to inquire into his role in the development of the 30–minute policy, a topic central to the plaintiffs' theory of Mr. Monaghan's liability and central to Mr. Monaghan's affidavit. The plaintiffs point to discovery material that lends support to their contention that Mr. Monaghan was directly involved in implementation of Domino's policies, and that he hired and fired the corporation's president, David Black. Unlike the plaintiffs in *Mulvey* and *Hughes*, these plaintiffs seek discovery from a party himself, not simply from a corporate officer.

At the outset of this memorandum, the court noted the possibility of significant future change in the discovery process; the present discovery process' imposition on the time of busy executives fuels that possibility. Nonetheless, under the discovery rules as they exist, Mr. Monaghan has raised no viable impediment to the taking of his deposition.

Mr. Monaghan failed to appear for deposition within the time established during the January 24 status conference. Rather than moving to strike the notice of deposition when he received it, Mr. Monaghan waited until the plaintiffs filed a motion for default. Mr. Monaghan's claimed reliance on an agreement between counsel to depose other employees first does little to support his position when (as discussed below) Domino's delayed the depositions of the other employees. Further, Mr. Monaghan's arguments in support of the motion to strike are, for the most part, arguments the court rejected in its previous orders enforcing discovery. The court cannot avoid the conclusion that Mr. Monaghan is willing to delay and frustrate discovery indefinitely, notwithstanding the previous orders regarding the discovery of the relationship between the 30–minute policy and the accident in this case.

Fed.R.Civ.P. 37(b) authorizes sanctions against a party who fails to comply with discovery orders. Such sanctions include striking pleadings, defaulting the disobedient party, and requiring the disobedient party and/or counsel to pay the costs and attorney fees caused by the failure to obey the discovery order. In *United States v. DeFrantz*, 708 F.2d 310, 311 (7th Cir.1983), the court noted that entry of default for a defendant's failure to attend his deposition was authorized without regard to whether the court has ordered the attendance, but only if the failure to attend was willful. *Sere v. Board of Trustees of University of Illinois*, 852 F.2d 285, 289 (7th Cir.1988), recognized the propriety of dismissing an action when the plaintiff had willfully and in bad faith failed to comply with a discovery order. Less drastic sanctions are not prerequisites to default. *United States v. DiMucci*, 879 F.2d 1488, 1493 (7th Cir. 1989).

In *United States v. DiMucci*, 879 F.2d at 1493–94, the court found no abuse of discretion in the district court's entry of default against the defendants for their failure to attend a noticed deposition and to comply with several orders compelling written discovery. Noting that the extreme sanction of default should be used sparingly and where there has been a clear record of delay or contumacious conduct or where less drastic sanctions have proven unavailing, the court did not require the district

court to impose lesser sanctions before entering default.

■■■ Whether to impose sanctions under Rule 37(b) is within the trial court's discretion. *Sere v. Board of Trustees,* 852 F.2d at 289. As the plaintiffs recognize, default is a severe sanction, and should be employed sparingly. The court believes that a final opportunity to comply with the notice of deposition should be afforded before retreat to that severe sanction. Therefore, the court will not enter default against Mr. Monaghan at this time, but will afford him an opportunity to rectify his failure to comply with the court's previous orders relating to discovery. The order found at the conclusion of this memorandum requires Mr. Monaghan to appear in Chicago for his deposition and to pay the plaintiff's fees in accordance with Fed. R.Civ.P. 37(b)(2) & (d).

### Motion to Strike Pleadings and Enter Default Against Domino's

The plaintiffs ask the court to strike Domino's answer and enter a default against Domino's, pursuant to Fed.R.Civ.P. 37(b), because of Domino's repeated failure to produce witnesses and respond to outstanding discovery. Alternatively, the plaintiffs ask for an order that all witnesses be produced for deposition in Chicago and that all discovery be provided by a date certain. The plaintiffs' motion was filed March 30, one month after the deadline the court had established for the taking of all previously noticed depositions and for responding to outstanding discovery. Further, the court's December 13, 1991 order directed Domino's to produce witnesses for deposition pursuant to Fed.R.Civ.P. 30(b)(6) by January 2; as of the filing of this motion, those depositions had not been completed. In addition, the plaintiffs state that they have yet to obtain compliance with requests for production that they made more than a year ago. The plaintiffs detail their efforts to depose the witnesses as follows:

1. On December 16, 1991, the plaintiffs noticed the depositions of five Domino's employees (David Black, Kevin Williams, Douglas Dawson, Timothy Carr, and John McDevitt) for January 14–16. The plaintiffs also noticed the deposition of Domino's expert, Paul Box.

2. On December 23, Domino's informed the plaintiffs that Domino's could not produce Messrs. Black, Dawson, and Williams because they were no longer employed by Domino's, and that January 14–16 was not convenient for the other depositions, but Domino's would try for January 29, 30, or 31. Domino's would also provide the names of Rule 30(b)(6) witnesses. Although the Rule 30(b)(6) witnesses were to be deposed by January 2, Domino's stated that the earliest it could produce such witnesses would be the end of January.

3. On January 6, Domino's informed the plaintiffs it could produce Tony Stachurski, a Rule 30(b)(6) witness, by February 5, but it did not have available dates for the other deponents.

4. On January 21, the plaintiffs located Mr. Black and Mr. Dawson and subpoenaed them for deposition on February 10 and 11.

5. On January 24, with all parties' agreement, the court established February 28 as the deadline for responding to outstanding discovery and completing all previously noticed depositions. Those depositions included the notices for Messrs. Monaghan, Carr, McDevitt, Box, Black, Williams, and Dawson.

6. On February 6, during Mr. Stachurski's deposition, the plaintiffs learned that Mr. Williams still worked for Domino's. Domino's then agreed to produce Mr. Williams.

7. Upon Domino's request, the plaintiffs rescheduled the Black and Dawson depositions for February 20 and 21. The plaintiffs suggested scheduling the continuation of Mr. Stachurski's deposition for one of those days as well. However, plaintiffs' counsel was scheduled to begin a trial on February 24, and asked to depose the other witnesses on March 3 and 7. On February 24, plaintiffs' counsel informed Domino's counsel that the February 24 trial had been postponed,

and asked to depose the other witnesses on February 24, 25, 27, or 28. Domino's did not commit to any of those dates.

8. On February 17, Domino's told plaintiffs' counsel that Mr. Dawson would not appear pursuant to his subpoena because he was too involved in negotiations for the Detroit Tigers baseball team.

9. On March 2, the plaintiffs requested dates for the Dawson, Carr, Williams, McDevitt, and Box depositions within the next two weeks because plaintiffs' counsel would be in trial beginning March 16. Domino's replied that any depositions would have to proceed on March 17.

10. Domino's informed plaintiffs' counsel that one of its Rule 30(b)(6) witness, Mario Napolitano, had undergone open heart surgery and would not be available for a few months. The plaintiffs later learned that Mr. Napolitano had returned to work, but he had not been produced for deposition.

11. Upon another request for the Williams, Carr, McDevitt, and Dawson depositions, Domino's said it would try to produce Mr. Williams, Mr. Carr, or Mr. McDevitt on March 17, along with a Rule 30(b)(6) witness, Mr. Raymond, but Mr. Dawson was still too busy working on behalf of the Detroit Tigers.

12. When plaintiffs' counsel later insisted on knowing which of the three witnesses would be produced along with Mr. Raymond on March 17, Domino's replied that it would only produce Mr. Raymond. Domino's said it would give dates for the remaining depositions no later than March 20.

13. On March 20, Domino's counsel sent plaintiffs' counsel a letter stating that:

I have been unable to reach my contact person at Domino's confirming dates for the remaining depositions, and thus will be unable to provide you with dates by the end of the business day. As I previously advised, I will be out of town until Monday, March 30, 1992. Accordingly, I will plan to provide you with dates when I return.

14. The plaintiffs also state that the deposition of Mr. Raymond had to be continued because Mr. Raymond acknowledged the existence of several marketing studies on the 30–minute guarantee that Domino's had not disclosed pursuant to the order of August 6, 1991.

15. On April 22, when Domino's filed its response to this motion, it reported that the Carr, Williams, and McDevitt depositions had been scheduled for April 23 and May 7; attached to the response was an April 13 letter to plaintiffs' counsel "confirming" those dates and stating, "Further please note that we will not be producing Mr. Dawson since he is no longer employed by Domino's." The plaintiffs report that they had never before seen the April 13 letter; that they had not agreed to those dates; and that plaintiffs' counsel previously had informed Domino's counsel of his unavailability in May due to a heavy trial calendar.

Domino's counsel submits an affidavit and supplemental memorandum stating that one of the plaintiffs' attorneys, David Schrauth, had agreed to depose Mr. Williams and Mr. Carr on April 23 and to depose Mr. McDevitt on May 7.

Based on this chronology and the previous discovery disputes in this case, the plaintiffs contend that Domino's refused to adhere to the court's discovery orders. They acknowledge that default is a drastic sanction, but see "no other remedy that will not reward Domino's tactics." However, should the court find default too severe, the plaintiffs ask the court to order that all depositions be completed in Chicago by a date certain.

Domino's maintains that it has made a good faith effort to settle this case. Domino's claims that on September 10, 1991 the plaintiffs were offered in excess of $1 million on behalf of all defendants. The plaintiffs note, however, that they were offered $750,000.00 at a settlement conference conducted before much discovery was underway. A letter from Mr. Halvorsen's counsel indicates that the insurer authorized settlement in the amount of $1.13 million

on behalf of all defendants, but this amount was never offered to the plaintiffs. The plaintiffs further note that the September settlement negotiations have nothing to do with the discovery dispute now before the court.

Domino's claims it need not produce for deposition non-party witnesses who have not been subpoenaed. Further, Domino's claims that there is no reason for the plaintiffs to depose additional corporate officers or Executive Team Members after Mr. Black's comprehensive deposition.

The plaintiffs note that Domino's has not previously raised an objection that it is not obligated to produce non-party witnesses who have not been subpoenaed, and that Domino's never mentioned this position when the court ordered Domino's to produce the witnesses by February 28. Further, when the plaintiffs did subpoena Mr. Dawson, after learning that Mr. Dawson was no longer Domino's employee, Domino's admonished the plaintiffs not to communicate with Mr. Dawson and intervened on Mr. Dawson's behalf when the plaintiffs tried to schedule his deposition.

The plaintiffs disagree with the contention that the plaintiffs should "properly subpoena" the non-party witnesses in order to depose them. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 2107 ("Though the rules do not say so expressly, a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party."). Because the witnesses are corporate officers, they need not be subpoenaed.

Domino's claims it has made every effort to schedule depositions and has now confirmed definite dates for the depositions. Domino's asks the court not to impose the drastic sanction of default because it has not acted in bad faith or willfully failed to comply with discovery orders. The plaintiffs refute Domino's claim that it acted in the spirit of cooperation, as Domino's did not find any available time for the depositions until the plaintiffs filed their motion for default.

The material placed before the court inevitably leads to the conclusion that Domino's has intentionally disregarded the scheduling deadlines imposed on January 24, although all parties agreed to those deadlines during the January 24 hearing. The court also finds a serious lack of cooperation on the part of Domino's in scheduling depositions pursuant to the January 24 order. The court finds no justification for the failure of Domino's or its counsel to cooperate in meeting the scheduling deadlines and, therefore, finds a sanction appropriate.

Again, the court believes that Domino's should be afforded a final opportunity to provide discovery before default is entered. The order found at the end of this memorandum affords such an opportunity.

### Scheduling

Mr. Monaghan's summary judgment motion has lain in abeyance pursuant to Rule 56(f) for the better part of a year. The original Rule 16(b) deadline for completion of non-expert depositions passed nine months ago; the modified deadline passed two months ago. The court would order completion of the noticed depositions within two weeks, except plaintiffs' counsel reports his unavailability in the month of May. Accordingly, the court will require completion of all non-expert depositions (including those of Mr. Monaghan and the on-again-off-again Mr. Dawson) by June 30. Recognizing that the plaintiffs should not bear the burden of sanctions, the court will consider a motion by the plaintiffs—but only by the plaintiffs—to modify that deadline.

Domino's shall bear the responsibility of producing Mr. Dawson, regardless of whether he remains employed by Domino's. The plaintiffs found him and served him once, and backed off at Domino's insistence. Domino's, having intervened, never produced him and now claims he is gone again. The plaintiffs should not have to find Mr. Dawson again.

Further, the court will order that the depositions be conducted in Chicago, with the deponents' (including Mr. Dawson, if located) travel expense to be borne by

Domino's. The court believes such a requirement to be just; enough plans for travel to Ann Arbor have been made and cancelled due to Domino's approach to the discovery process.

### Conclusion

The court declines the plaintiffs' requests for striking of pleadings and motions and entry of defaults only because of the severity of the sanctions. If today's order fails to achieve compliance, those sanctions will be appropriate, rather than severe.

For the foregoing reasons, the court hereby:

1. DENIES the plaintiffs' motion to strike the pleadings and motion for summary judgment filed by Thomas Monaghan and enter default against Thomas Monaghan. In lieu thereof, the court directs Thomas Monaghan to make himself available for deposition in Chicago by June 30, 1992, and orders Mr. Monaghan to pay the plaintiffs' costs and attorney fees incurred by Mr. Monaghan's failure to make himself available for deposition as required by the order of January 24, 1992.

2. DENIES the motion by defendant Thomas Monaghan to strike the notice of deposition.

3. DENIES the plaintiffs' motion to strike the pleadings of Domino's Pizza, Inc. and to enter default against Domino's Pizza, Inc. In lieu thereof, the court directs Domino's Pizza, Inc. to make the previously noticed witnesses, except for Domino's expert, available for deposition in Chicago by June 30, 1992, and orders Domino's Pizza, Inc. to pay the plaintiffs' costs and attorney fees incurred by the failure of Domino's Pizza, Inc. to comply with the order of January 24, 1992.

Counsel for the plaintiffs is directed to submit a statement of the costs and expenses incurred in obtaining this order with ten (10) days of this date.

In addition, a telephonic status conference for the purpose of scheduling further deadlines is scheduled for Thursday, July 9, 1992, at 1:00 p.m. (Indiana time) with the court to establish the call.

SO ORDERED.